IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   12-cv-02960-WYD

ROSS LUCERO,

      Plaintiff,

v.

CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

---

## ORDER

---

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for disability insurance benefits ["DIB"] and supplemental security income ["SSI"].  For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I.    BACKGROUND

In May 2009, Plaintiff filed applications for disability benefits under Titles II and XVI of the Social Security Act ("the Act").  (Administrative Record ["AR"] 160-66.) Plaintiff was born on February 27, 1961, and was 43 years old on the alleged onset date and 50 years old on the date of the ALJ's decision.  (*Id.* 28, 30, 160.)  He has an 11th grade education (*id.* 204), and worked as a cashier.  (*Id.* 60, 206.)  Plaintiff claimed that he became disabled on April 25, 2004, due to back surgery.  (*Id.* 199.)  Relevant to this, the record reveals that Plaintiff has a long history of congenital spine defects and back injuries with episodes in 1984, 1998, 2000, 2003 and 2004.  (*Id.* 336, 304.)

The Colorado Disability Determination Services denied Plaintiff's claims (AR 63, 74, 87-100), and he requested a hearing before an ALJ. (*Id.* 101-02.) Following a hearing in July 2011 (*id.* 35-62), an ALJ issued a decision dated August 17, 2011, in which he concluded that Plaintiff was not disabled within the meaning of the Act. (*Id.* 14-34.)

At step one, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2009, and that he had not engaged in substantial gainful activity since April 25, 2004, the alleged onset date. (AR 19.) At step two, the ALJ found that Plaintiff had the following "severe" impairments: degenerative lumbar disc disease status-post laminectomy, osteoarthritis right knee, bilateral hip bursitis, chronic pain syndrome, and gout. (*Id.*) The ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id.* 20).

The ALJ then assessed Plaintiff's residual functional capacity ["RFC"]. He found that Plaintiff could "lift and carry 20 pounds frequently and 30 pounds occasionally, stand a total of 4 hours in an 8 hour workday, sit a total of 4 hours in an 8 hour workday, with an opportunity to change positions every 60 minutes for a 3-minute position change; can do occasional postural maneuvers; should avoid climbing ladders, ropes, and scaffolds, should void exposure to unprotected heights, should not have any direct exposure in the workplace to alcohol. (AR 21.)

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (AR 28.) At step five, relying on vocational expert testimony, the ALJ found that

there were jobs existing in significant numbers in the national economy that Plaintiff could perform.  (*Id.* 29.)  Thus, the ALJ concluded that Plaintiff was not disabled under the Act at any time through the date of the decision.  (*Id.* 30).

The Appeals Council denied Plaintiff's request for review of the ALJ's decision (AR 1-8), making the ALJ's decision the Commissioner's final decision.  *See* 20 C.F.R. § 422.210(a).  Plaintiff timely requested judicial review, and this appeal followed.

Plaintiff argues that the ALJ erred in assessing his credibility, and in rejecting medical evidence because the doctors failed to consider Plaintiff's motive of self-gain when they evaluated his symptoms.  Plaintiff also argues that the ALJ erred in preferring the State's consultative opinion over a treating physician's opinion.

II.    ANALYSIS

A.    Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for

reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

The ALJ's decision must be evaluated "based solely on the reasons given stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  A post-hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance.  *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).  Thus, I will not consider post-hoc arguments of the Commissioner.

B.     The Merits of Plaintiff's Arguments

1.     The RFC Assessment and the Weighing of the Medical Opinions

I first address the weighing of the medical evidence.  The ALJ's RFC was based primarily on the functional assessment of Dr. Linda Mitchell, the consultative examiner for the State agency, which the ALJ gave "substantial weight to." (AR 26.)  He stated that "her opinions are consistent with the evidence and the observations of treating physicians." (*Id.*)  The ALJ also noted the statement in a Med-9 form of Dr. Karen Weber, one of Plaintiff's physicians, that Plaintiff is "**not totally** disabled but does have a physical or mental impairment that **substantially** precludes this person from engaging in his/her occupation." (*Id.*)  He gave this opinion "considerable weight, because she has seen the claimant over the course of a year and she referenced the claimant's specific impairments and symptoms." (*Id.*)

I first find that the ALJ erred in connection with his reliance on state agency physician Dr. Mitchell's findings.  While he relied on her opinion for the RFC, he failed to include Dr. Miller's finding that Plaintiff would need positional changes every 30 minutes.

(AR 440.)  This is significant because the vocational expert stated in response to a hypothetical question that if a person with the RFC as found by the ALJ needed to change positions every 30 minutes, it would make it difficult to sustain competitive employment."  (AR 61.)  Thus, the vocational expert did not identify any jobs that Plaintiff could perform with this limitation.  Probably in an effort to overcome this obstacle, the ALJ stated in the RFC that Plaintiff would only need to change positions "every 60 minutes for a 3-minute position change".  (*Id.* 21.)  He did not explain how he reached this finding or why he did not adopt Dr. Miller's finding, even though he purportedly gave "significant weight" to Dr. Miller's report.  This requires a remand. Without such an explanation, I cannot conclude that substantial evidence in the record exists to support the ALJ's determination.  *See Confere v. Astrue*, No. 06-4217, 2007 WL 1196520, at *3 (10th Cir. April 24, 2007) (unpublished) (remanding where the ALJ's RFC reflected some of the limitations identified by the state agency physicians, as the ALJ should have explained why he rejected some of the limitations) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)).[1]

More importantly, I find that the ALJ did not properly weigh the opinions of treating physician Dr. Pham.  The ALJ found that Dr. Pham's opinion in a Medical Source Statement (AR 482-485) was "not entitled to controlling weight."  (*Id.* 27.) Dr. Pham noted that she had been seeing Plaintiff since 2009, and diagnosed him with chronic lower back pain secondary to spinal stenosis at L4-L5 status post back surgery. (*Id.* 482.)  She opined that Plaintiff could not be expected to sit more than 2 hours or

---

[1] I find unpersuasive the Commissioner's reliance on *Gallegos v. Apfel*, 3 F. App'x 748, 749-50 (10th Cir. 2001) as support for the ALJ's RFC finding.  Moreover, this is an improper post hoc argument.

stand and walk more than 2 hours.  (*Id.* 483.)  She further opined that Plaintiff should

rarely lift any weight and never lift more than 10 pounds, that he could rarely stoop and

never twist, crouch or climb ladders or stairs.  (*Id.* 484).  Dr. Pham's opinion was the

only detailed description of Plaintiff's functional abilities submitted by a treating source.

The ALJ stated as support for his decision not to give Dr. Pham's opinion

controlling weight the following:

> Dr. Pham's functional capacity assessment includes that the claimant is not
> able to site, stand, or walk for a total of 8 hours, the claimant and only rarely
> lift and carry less than 10 pounds, can never lift more than that, can never
> crouch, squat, climb stairs or ladders, and has significantly reduced ability to
> use his upper extremities.  These extreme limitations are not supported in the
> record.   The claimant himself has said that he can lift 20 pounds, has
> admitted that he is fairly active every day, and he has helped his father repair
> an automobile.   The objective diagnostic imaging does not show cervical
> abnormalities that would impede the claimant's use of his upper extremities.
> The claimant does not have ongoing lumbar or cervical nerve root
> impingement, has straight leg raising tests are negative, he has normal
> strength, tone, reflexes, and sensation, and he has stated that he enjoys
> using the weights at physical therapy.  However, a reading of the medical
> records suggests that this treating source accepted at face value the
> statements made and symptoms reported by the claimant.  Indeed, there is
> nothing in the medical treatment records to suggest otherwise.  For example,
> there is nothing in the medical treatment records to suggest that any source
> conducted any type of validity testing.  Nor is there anything in the records
> to suggest that during treatment any treating source considered whether or
> not the claimant's subjective symptoms or self-reporting were motivated in
> whole or in party by primary or secondary gain.  Further, this treating source
> opinion does not satisfy the regulatory requirement that it must be
> "consistent" with "the other substantial evidence" in the record.  In this case,
> other physicians, including the consultative examiner, concluded that the
> claimant's limitations would not preclude the performance of substantial
> gainful activity (Exhibit 8F).

(*Id.* 26-27.)  Indeed, the ALJ found that all of "the treating source opinions are not

entitled to more weight than, much less controlling weight over, the opinions of the other

medical sources" as they "overstate the claimant's functional limitations."  (*Id.* 28.)

Turning to my analysis, when weighing a treating physician's opinion the ALJ is required to "complete a sequential two-step inquiry, each step of which is analytically distinct". *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). The initial determination the ALJ must make is whether the treating physician's medical opinion "is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates. *Id.* "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* "If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Id.*

Here, while the ALJ stated that while he was not giving controlling weight to Dr. Pham's opinion, it is unclear what weight he actually gave, if any, that opinion. This alone is error, as it does not allow me to meaningfully review the ALJ's decision. *See Sissom v. Colvin*, 512 F. App'x 762, 766-67 (10th Cir. 2013) (where the ALJ did not give the doctor's opinion "controlling weight" but did not articulate what weight, if any, he gave to the opinion, simply assigning greater weight to the opinions of the non-examining agency physicians, the court found error because the ALJ's decision was not sufficiently specific to make clear the weight the ALJ gave to the treating physician's opinion and the reasons for that weight).

I also find that the ALJ erred in his analysis of whether Dr. Pham's opinion should be entitled to controlling weight. First, he did not determine, as required in connection with this analysis, whether Dr. Pham's medical opinions were well-supported by medically acceptable clinical or laboratory diagnostic techniques as to Plaintiff's impairments. Indeed, Dr. Pham noted the clinical findings, laboratory and test results

that supported Plaintiff's impairments on the form, including an MRI lumbar spine in 2003, spinal stenosis of L4-5 and L5-S1, and other findings.  (AR 482.)  The ALJ completely ignored these findings.

Moreover, the record is replete with objective findings documenting Plaintiff's impairments and chronic low back pain.  (*See, e.g.,* AR 380—finding on physical exam "Point tenderness over both greater trochanters", 396—finding tenderness to palpation in the paraspinal and upper and lower trapezius muscles" and muscular knots which could be felt throughout the patient's back, 400—tenderness over Plaintiff's trochanteric bursa on his hips bilaterally, 403—"Palpation along his spine revealed tenderness at the level of C4-C5, which is unchanged from his previous exam. . .", *see also* 408, 487.) The ALJ selectively applied the evidence on this issue, noting only findings that supported his decision.  (*Id.* 27.)  This was error.  *Carpenter*, 537 F.3d at 1265 (the ALJ may not "'pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence'") (quoting *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)).[2]

The ALJ did find that Dr. Pham's opinion was inconsistent with other substantial evidence in the record, but the only evidence it was actually in conflict with appears to be that of consultative state agency physician Dr. Miller.  The Tenth Circuit has made

---

[2] The Commissioner also selectively applies the evidence in her response brief.  I also note that while the Commissioner argues that the ALJ's decision was supported by substantial evidence because Dr. Pham's last office visit notes from March 2011 state that Plaintiff had no further or significant neurological deficits (Def.'s Resp. Br. at 11), this is an inaccurate statement of the record.  Instead, Dr. Pham states that Plaintiff "has no further or significant neurological deficits *from when I first saw him about 1 year ago.*"  (AR 494.)  Thus, Dr. Pham was stating that nothing had changed from a year ago.  He made this clear in the notes from the physical examination, stating that the "[n]eurologic exam is essentially unchanged."  (*Id.*)

clear that "'[w]hen a treating [source's] opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other [sources'] reports to see if they outweigh the treating [source's] report, not the other way around.'"  *Valdez v. Barnhart*, 62 F. App'x 838, 841 (10th Cir. 2003) (quoting *Goatcher v. United States Dep't of Health and Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995)).  The ALJ appears to have violated this rule.

Moreover, the ALJ failed to consider that Dr. Pham's opinion is supported at least in part by the opinion of treating physician Dr. McPherson, who suggested as early as 2003 that Plaintiff would be limited to sedentary work.  (AR 334.)  It was also consistent with the findings of chronic low back pain and other medical findings of treating physician Dr. Weber in the October 2010 Med-9 form.  (*Id.* 444.)  While the ALJ relied on Dr. Weber's opinion to support his RFC, this opinion does not provide substantial evidence to support the RFC.  Dr. Weber stated only that Plaintiff was not totally disabled but was substantially precluded from his usual occupation.  (*Id.* 442.)  She did not specify what type of work Plaintiff could do, *i.e.,* sedentary or other work, or what functional limitations Plaintiff may have in connection with his ability to work.  (*Id.*)

Further, it does not appear that the ALJ gave the opinion of Dr. Pham and the other treating physicians deference as required and weighed the relevant factors as to the weight to be given their reports.  As explained by the Tenth Circuit, "[e]ven if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight

assigned." *Krauser,* 638 F.3d at 1330.  "If this is not done, a remand is required."  *Id.*

"Thus, a deficiency as to the conditions for controlling weight raises the question of how

much weight to give the opinion, it does not resolve the latter, distinct inquiry."  *Id.* at

1330-31.  This is also error that requires remand.

I also find that several of the reasons given by the ALJ to give less weight to

Dr. Pham's opinion are not supported by substantial evidence.  First, as previously

found, the ALJ selectively applied the evidence in connection with the objective findings

that supported Dr. Pham's opinion.  Second, the fact that the ALJ found Dr. Mitchell to

be "a well-qualified physician with a working knowledge of the rules and regulations of

the Social Security Administration relating to physical impairments, who is experienced

in evaluating functional limitations and prescribing work restrictions as they relate to

disability claims filed with the Social Security Administration" (AR 27), is not a basis to

give greater weight to the agency physician's opinion over that of the treating physician.

The ALJ also erred in finding that Dr. Pham's opinion was based on Plaintiff's

subjective complaints, *i.e.,* that Dr. Pham took Plaintiff's statements at face value.  (AR

27.)  An ALJ may not reject the opinions of a treating physician "based merely on his

own speculative conclusion that the[ir] report[s] w[ere] based only on claimant's

subjective complaints."  *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004).

"The ALJ [must have] a legal or evidentiary basis for his finding that [a treating

physician's] opinions were based merely" on Plaintiff's subjective complaints of pain.  *Id.*

Here, while the ALJ stated that Dr. Pham and the other treating doctors did not conduct

any type of validity testing, she ignored the objective findings in the record that

supported their findings.

Also problematic are the ALJ's findings that (1) Dr. Pham's and the other treating providers' opinions could be rejected because they did not consider whether Plaintiff's "subjective symptoms or self-reporting were motivated in whole or in party by primary or secondary gain", (2) and that Dr. Pham's "extreme limitations are not supported in the record" as Plaintiff "himself has said that he can lift 20 pounds, has admitted that he is fairly active every day, and he has helped his father repair an automobile." (AR 27.) These are not valid factors to discount Dr. Pham's opinion. A doctor's statements about Plaintiff's condition or impairments "are specific medical findings". *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The ALJ errs in rejecting those opinions in the absence of conflicting medical evidence. *Id.* Indeed, "'[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion*'". *Langley*, 373 F.3d at 1121 (emphasis in original) (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)).[3]

Based on the foregoing, I find that this case must be remanded for a proper assessment and weighing of the medical evidence.

      2.   <u>The Credibility Assessment</u>

Plaintiff also argues, and I agree, that the ALJ erred in assessing his credibility, and that a remand is required on this basis as well. In so finding, I acknowledge that "'[c]redibility determinations are peculiarly the province of the finder of fact.'" *Kepler v.*

---

[3] The *Langley* court rejected a similar argument, finding that the fact a doctor may advocate for his patient's cause is not a good reason to reject his opinion as a treating physician. 373 F.3d at 1121.

*Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Sec. of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)).  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  *Id.* (quotations omitted).

In the case at hand, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, in light of the mild findings on diagnostic imaging, the normal clinical examination findings, the normal strength and neurological findings, and his level of activity, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully persuasive to the extent they are inconsistent with the above" RFC.  (AR 23.)  I first find error with the ALJ's findings that Plaintiff had "mild findings on diagnostic imaging" and "normal clinical examination findings."  As discussed in the previous section, there are many objective findings documenting Plaintiff's impairments, and the ALJ improperly selectively applied the evidence.  Moreover, the ALJ's finding of "mild" findings on diagnostic imaging is an improper lay judgment of that of the ALJ.  Dr. Pham noted findings on diagnostic imaging which supported her opinion, including an MRI Lumbar spine in 2003, spinal stenosis of L4-5 and L5-S1, and other findings (*id.* 482).  Exempla attending physician Dr. Weber found "chronic lower back pain secondary to spinal stenosis of L4-L5; bilateral re-stenosis, spinal stenosis of L5-S1, herniated nucleus pulposis of L4-L5 and right sided L5 neuroforaminal stenosis s/p [status post] surgery" together with "radiculopathy" that "will need to be alleviated" with narcotics for the indefinite future.  (AR 444.)  Why those findings might be "minimal"

remains unexplained, and the ALJ was not entitled to second guess how those results translated into medical findings.

I now turn to the ALJ's other findings regarding credibility. The ALJ began his discussion of credibility by noting that Plaintiff's "pecuniary interest" raised the issue of whether "personal gain influenced the witness' evidence." (AR 24.) Additionally, he stated that "the record suggests that this claim has been on the claimant's mind," as shown by his attempt to obtain medical evidence to support it and legal representation to prosecute it. (*Id.*) Thus, the ALJ went beyond the record evidence to view Plaintiff's status as a disability claimant and his attempts to prove his claim, *without more*, as impediments to credibility. The ALJ's reliance on Plaintiff's status as a disability claimant to doubt credibility has no support in pertinent case law or Social Security Rulings and was improper. Indeed, every disability claimant has a similar "pecuniary motive" and most seek medical evidence and legal counsel. *See Murillo v. Colvin*, No., 2013 WL 5434168, at *12 (C.D. Cal. Sept. 27, 2013) ("'[g]enerally speaking [ ] every claimant who applies for benefits seeks pecuniary gain, and this fact does not indicate a lack of credibility") (quotation omitted) (citing *Ratto v. Sec'y, Dept. of Health & Hum. Servs.,* 839 F. Supp. 1415, 1428–29 (D. Or.1993) (noting that "[i]f the desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony, then no claimant ... would be found credible")).[4]

---

[4] The ALJ's findings on this issue obtained greater weight because, as explained in the previous section, he also rejected objective medical evidence for failing to take into account Plaintiff's supposed gain-seeking motives.

I also find that the ALJ selectively applied the evidence, and even exaggerated the evidence, as to Plaintiff's activities in finding that they made him less credible.  For example, the ALJ noted that Plaintiff's back pain was "exacerbated after helping his father fix a carburetor (Exhibit 6F/26).  (*Id.* 23.)  He found that "[t]his strongly indicates that the claimant's pain flares after doing strenuous physical work or activity, which demonstrates that he has done some strenuous activities."  (*Id.*)  He further found that "[t]his suggests that the claimant is capable of doing some work activity."  (*Id.*)  The actual evidence on this issue shows that Plaintiff had back pain after he helped his dad with the carburetor, as "while he was leaning over the table the back started spasming and he did have some locking of his back which relaxed when he stood up."  (AR 396.)  This is hardly indicative of strenuous activity supporting Plaintiff's ability to work.  Moreover, "[s]poradic diversions do not establish that a person is capable of engaging in substantial gainful activity."  *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

The ALJ also found Plaintiff to be inconsistent and therefore not credible because of "his assertion of pain in a stocking/glove distribution (Exhibit 8F/1), which is not medically consistent with the claimant's impairments."  (AR 25.)  He stated that "an allegation of bilateral pain in this distribution is suggestive of a Waddell's sign, or exaggeration."  (*Id.*)  I find this to be an improper ground for rejecting Plaintiff's credibility.  No medical source identified the stocking glove distribution as a Waddell's sign or other evidence of exaggeration of malingering or mentioned any such evidence at all.  Even Dr. Mitchell, whose opinion the ALJ relied on, found that Plaintiff made an "adequate effort throughout" his examination and that her "findings were commensurate with [Plaintiff's] complaints."  (*Id.* 437.)  The ALJ is therefore not only trying to interject

his own lay opinions, he is trying to impose opinions that differ sharply from the very source he cites.

Moreover, a single Waddell's sign is not sufficient to discount the credibility of a social security claimant because Waddell's signs do not by themselves suggest symptom exaggeration or malingering. *See Kirby v. Astrue*, 568 F. Supp.2d 1225, 1227 (D. Colo. 2008) ("Every federal court considering the issue appears to have held that, in order to be relevant, at least three of the five Waddell's signs must be present. . . .An ALJ ruling based upon a finding of two or fewer Waddell's signs is not supported by substantial evidence"). Finally, Plaintiff has cited authority that a stocking glove distribution of pain is not, in fact, inherently a Waddell's sign but is often present in cases of peripheral nerve damage. *McGraw-Hill Concise Dictionary of Modern Medicine*, The McGraw-Hill Companies, Inc. (2002).

The credibility finding was also based on the ALJ's finding that Plaintiff's "active life style" which "is not sedentary" is inconsistent with his statement that he cannot work. (AR 25.) The statement about Plaintiff's "active life style" in a treatment note of Dr. Pham's was made in the context of determining whether Plaintiff was so sedentary that he might have deep vein thrombosis in his legs (as Plaintiff was complaining of bilateral calf pain and cramps). (*Id.* 458.) Dr. Pham concluded that deep vein thrombosis was unlikely, in part because Plaintiff was "relatively active and not sedentary." The ALJ took the statements out of context, and ignored Plaintiff's complaints of being limited in his daily activities. (*See* AR at 211-218, 53-54.) Indeed, other than cooking (*id.* 45), the ALJ did not ask Plaintiff about his activities.

The ALJ also distorted the evidence.  For example, the ALJ stated that Plaintiff reported in 2009 that "his intermittent lower back pain is worse 'after a hard work.'"  (AR 23.)  The actual statement from the doctor was that:

> Obtaining more history from the patient, his lower back pain is worse at night after a day of hard work. It has been present for several years.  The patient has had numerous hard labor occupations including construction in the past and was having back pain with those as well.

(*Id.* 396.)  Interpreting this statement as evidence of Plaintiff's continued physical labor belies common sense, particularly in light of the fact that there were no days of hard work in the record since April 2005.  (*See, e.g.,* 199.)   Indeed, this fact is undisputed.

As to Plaintiff's complaint about drowsiness requiring him to lie down multiple times a day, the ALJ found that Plaintiff loses credibility because "in the record, the claimant did not complain of significant drowsiness enough to warrant a change of medication."  (AR 25.)  That argument, however, presumes that Plaintiff wanted or needed his medication changed because it made him drowsy.  As Dr. Fontana wrote in a May 2004 treatment note, "when dealing with someone with pain, sedation is a desired affect.  That is one reason I chose these medicines."  (*Id.* 325.)  The very point of narcotic medication is sedation.  Drowsiness is an inevitable but acceptable side effect that nevertheless interferes with an ability to work full time.

The ALJ also stated that while Plaintiff testified that he has difficulty concentration, he "observed the claimant throughout the hearing, and he did not demonstrate or manifest any difficulty concentrating during the hearing."  (*Id.*)  This also was improper.  The Tenth Circuit has long followed the general rule that the ALJ may

not discredit a claimant's allegations solely on the basis of personal observation.  *See, e.g., Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).

I further find that the ALJ's finding of inconsistency regarding illegal drugs has no foundation.  The record contains no reference to the use of illegal drugs by Plaintiff.  I also question whether the ALJ properly considered all the evidence in finding that Plaintiff gave inconsistent evidence about using alcohol, comparing his testimony that he drinks one to two beers a month with a reference in Dr. Mitchell's report that "[h]e has a 12-pack of beer daily."  (AR 24-25.)  Dr. Mitchell's report appears to be directly contradicted by all the other evidence in the record that suggests Plaintiff consumes only minor amounts of alcohol, possibly varying over time, but still consistent with his testimony.  (See Pl.'s Opening Br. at n. 90.)  .  Nor is there any secondary evidence of an alcohol problem, such as withdrawal, regular drinking activities, elevated liver enzymes or legal or social problems, that would support a finding of heavy drinking.  The ALJ should reassess this issue on remand, keeping in mind that "'a decision is not based on substantial evidence if it is overwhelmed by other evidence or if there is a mere scintilla of evidence supporting it.'"  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).

Finally, I find errors with the ALJ's pain analysis, and direct that this be reassessed on remand.  The record in this case is replete with objective findings that substantiate Plaintiff's complaints of pain, which the doctors obviously corroborated through their diagnoses of chronic pain.  The record also demonstrates that Plaintiff sought several modalities of treatment, including surgery, physical therapy, and injections, and that he used narcotic medications to manage his chronic pain.  Yet the

ALJ appeared to completely discount Plaintiff's complaints of pain, and did not appear to consider whether and how his pain impacted his ability to work.  I find this was error. *See Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) (finding that the ALJ's pain analysis was "improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence or explain how Mrs. Carpenter's repeated attempts to find relief from pain, and all the drugs she has been prescribed for pain, resulted in a conclusion that she is unlimited in any regard by pain or the side effects from her pain medication"); *Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. June 17, 1994) ("[i]f the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry. . . .The [Commissioner] must show that 'jobs exist in the national economy that the claimant may perform *given the level of pain [she] suffers*.'" *Id.* (quoting *Thompson*, 987 F.2d at 1490-91).

The fact that Dr. Pham reported that Plaintiff's low back pain was relatively well controlled with physical therapy and medication (AR 495) does not mean that Plaintiff suffered no pain, and the record is clear on this issue.  Indeed, Dr. Pham noted in August 2010 that while Plaintiff's pain is "relatively well controlled" with medication, this meant that "he will always have baseline pain but that these medications will take *some of the edge off the severe pain* that he has had.  (*Id.* 470.)

III.   UNDERLINE CONCLUSION

Based upon the foregoing, I find that the ALJ erred in his assessment of the treating physicians' opinions and other medical evidence and in assessing Plaintiff's pain and credibility.  Accordingly, it is

-18-

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner

for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C.

§ 405(g).

Dated:  March 27, 2014

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge